UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| VERNON R. TRAVERSIE, an enrolled member of the Cheyenne River Sioux Tribe and citizen of South Dakota, | ) ) ) ) | CIV. 12-5048-JLV |
| | ) | |
| Plaintiff, | ) ) | ORDER |
| | ) | |
| vs. | ) ) | |
| | ) | |
| RAPID CITY REGIONAL HOSPITAL INC.; REGIONAL HEALTH INC.; REGIONAL HEALTH PHYSICIANS INC.; TRS SURG ASSIST, INC.; and JOHN and JANE DOE NOS. 1-100, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

On July 16, 2012, plaintiff Vernon R. Traversie filed a complaint against

Rapid City Regional Hospital, Inc., Regional Health, Inc., Regional Health

Physicians Inc., TRS Surg Assist, Inc., and John and Jane Doe Nos. 1-100

(collectively referred to as "defendants"). (Docket 21). The complaint alleges

four causes of action against defendants: (1) a violation of Mr. Traversie's civil

rights; (2) medical negligence; (3) battery; and (4) intentional infliction of

emotional distress. Id. Pending before the court is a motion for summary

judgment filed by defendants Rapid City Regional Hospital, Inc., Regional

Health, Inc. and Regional Health Physicians Inc. (Docket 38). Defendant TRS

Surg Assist, Inc. joined in the motion for summary judgment.  (Docket 51).
Based on the court's analysis, Rapid City Regional Hospital, Inc., Regional
Health, Inc. and Regional Health Physicians Inc.'s, motion for summary
judgment is granted in part and denied in part and TRS Surg Assist, Inc.'s
motion for summary judgment is granted.

## MATERIAL FACTS

The parties submitted statements of material facts.  (Dockets 40 & 54).
Plaintiff filed a response disputing nearly every fact set forth in defendants'
statement.  (Docket 58).  A description of the conflicting material facts is as
follows:

On August 22, 2011, plaintiff Vernon Traversie, a Native American, was
admitted to the Rapid City Regional Hospital complaining of chest pains.
(Docket 54 at ¶ 4).  On August 26, 2011,[1] Dr. Paul Orecchia performed open
heart surgery on Mr. Traversie.  (Docket 43-1 at p. 11).  After his surgery, Mr.
Traversie was transferred to Regional Hospital's Surgical Intensive Care Unit
where George Sazama, a nurse, provided care.  (Docket 45-2, 11:7-10).  On
August 28, 2011, Mr. Traversie was transferred to a regular hospital room and
remained there until he was discharged on September 8, 2011.  (Docket 43-1
at p. 70).

---

[1]The anesthesia records indicate Mr. Traversie underwent open heart
surgery on August 26, 2011.  (Docket 43-1 at p. 11).  The discharge summary
indicates Mr. Traversie had open heart surgery on August 27, 2011.  Id. at p. 2.

Mr. Traversie claims that sometime between August 27 and September 8, he was verbally abused by a nurse named "George."  (Docket 54 at ¶ 5). According to Mr. Traversie, he awoke in the middle of the night in extreme pain and asked George for more medication and George refused.  <u>Id.</u>  Mr. Traversie then asked a female nurse for medication.  <u>Id.</u>  Mr. Traversie alleges the female nurse found George watching TV.  <u>Id.</u>  George returned to Mr. Traversie's room and threatened Mr. Traversie by saying, "You f***ing son of a bitch, he said, I'll teach you a "f***ing lesson you'll never forget you dumb f***ing Indian."  <u>Id.</u> Mr. Traversie claims George slammed his arm down four times causing pain and injury to his shoulder and arm.  <u>Id.</u>  Mr. Traversie claims he began feeling drowsy and fell asleep while George began doing something to his stomach.  <u>Id.</u> Mr. Traversie claims that during his stay at the hospital, "KKK" was scratched, carved or burned onto his stomach.[2]  (Docket 1).

Defendants dispute these allegations in their entirety.  Defendants contend George Sazama, Mr. Traversie's nurse, was never watching television while caring for Mr. Traversie, never slammed his arm down, never spit in his face, and did not refuse Mr. Traversie medication.  (Docket 40 at ¶¶ 21-24).

---

[2]Mr. Traversie has been legally blind for approximately 30 years.  (Docket 54 at ¶ 2).  Mr. Traversie relied on what others, including his pastor, Ben Farrar, told him about the scarring on his stomach to form his own opinions. (Docket 46-1, 98:3-23)

Mr. Traversie disputes these facts, arguing his version of events is what actually happened.  (Docket 58 at pp. 7-8).

Mr. Traversie asserts he immediately reported the event to a nurse supervisor.  (Docket 58 at p. 8).  Defendants contend there is no record indicating Mr. Traversie ever complained about this event to JoAnn Stock, Mr. Sazama's supervisor, or Angie Mills, the director of intensive care.  (Docket 40 at ¶¶ 25-26).

Mr. Traversie also claims that sometime on September 7 or 8, 2011, an unknown female employee at Rapid City Regional Hospital slipped into his room and told him that something had been done to him that she disapproved of and as soon as he got home he needed to have his stomach photographed. (Docket 54 at ¶ 7).  This unknown female allegedly told Mr. Traversie he would never know her by name and then slipped out of his room.  Id.  Mr. Traversie has not identified this unknown female.

On September 9, 2011, Bobbie Pearman, Mr. Traversie's home health nurse, resumed caring for Mr. Traversie.[3]  (Docket 40 at ¶ 7).  Mr. Pearman observed Mr. Traversie's stomach and was shocked by the surgical scars and cuts.  Id.; see also Docket 46-2, 10:4-14.  Mr. Pearman testified at his deposition that when he examined Mr. Traversie's stomach he "didn't see any

---

[3]Mr. Pearman cared for Mr. Traversie prior to his open heart surgery. (Docket 40 at ¶ 7).  Dr. Orrechia provided a referral order for home health care specifically to provide incision site checks.  (Docket 43-1 at p. 6).

writing or initials or no KKK or whatever."  (Docket 46-2, 12:2-4).  Mr. Pearman testified he "saw a lot of scars and cuts" that "just didn't look appropriate." (Docket 46-2, 12:4-5).

Mr. Pearman called the police and the police came and took photographs. (Docket 46-2, 11:18-20).  Mr. Pearman also took photographs and sent them to the Indian Health Services ("IHS") hospital.  (Docket 46-2, 11:1-15).  Dr. Kernizan, a doctor with IHS, saw the photographs and told Mr. Pearman that Mr. Traversie needed to come in for an examination.  Id.  A nurse at IHS saw the photographs and thought she read "OINK" in the scarring.  (Docket 49-1 at p. 2).  Lisa Veit, a nurse at the IHS hospital, saw the photographs of Mr. Traversie's stomach and personally observed Mr. Traversie's stomach when he arrived at the hospital on September 9, 2011, and testified during her deposition that what she observed was "some scars and some tape burns."[4] (Docket 47-2, 8:11-24).

Defendants claim the scarring on Mr. Traversie's stomach is not "KKK" but is the result of bandages and tape being placed in slightly different positions each time a bandage was re-dressed to avoid tape irritation in the same area.  (Docket 40 at ¶ 3).  The defendants point to medical records which

---

[4]Mr. Traversie disputes this fact to the extent it asserts Lisa Veit is a registered nurse at the IHS hospital.  (Docket 58 at p. 5).

contain notations from various nurses about tape irritation on Mr. Traversie's stomach.  Id. at ¶ 4.

Defendants claim Dr. Rommel Brandt cared for Plaintiff during his emergency room visit on September 9, 2011.[5]  (Docket 40 at ¶ 12).  Dr. Brandt observed photographs of Mr. Traversie's stomach and also personally observed Mr. Traversie's stomach during his emergency room visit.  Id. at ¶ 13.  Dr. Brandt testified during his deposition that Mr. Traversie expressed concern that someone had carved three Ks into his stomach during his stay at the Rapid City Regional Hospital.  Id. at ¶ 14.  Dr. Brandt told Mr. Traversie the marks could just be superficial lacerations from the constant taping and re-taping of bandages.  Id. at ¶ 15.

Later on September 9, 2011, during Mr. Traversie's emergency room visit, Dr. Yeisabeth Almeyda, a doctor at the IHS hospital, assumed care of Mr. Traversie.  Id. at ¶ 16.  Dr. Almeyda explained to Mr. Traversie, his pastor, Ben Farrar, and Karen Townsend, the irritation on Mr. Traversie's stomach appeared to be tape burns from frequent dressing changes on his surgical incision sites, which created macerations and scarring.  Id. at ¶ 17; see also Docket 47-4, 13:16-24, 14:10-17.

---

[5]Mr. Traversie disputes every fact related to treatment provided by Dr. Brandt.  Mr. Traversie asserts he "has never spoken with Dr. Brandt." (Docket 58 at p. 6).

As a result of these events, Mr. Traversie filed a complaint alleging four causes of action against defendants: (1) a violation of his civil rights; (2) medical negligence; (3) battery; and (4) intentional infliction of emotional distress. (Docket 21).

## DISCUSSION

### A.    Summary Judgment Standard

Under Fed. R. Civ. P. 56(a), a movant is entitled to summary judgment if the movant can "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce affirmative evidence setting forth specific facts showing that a genuine issue of material fact exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Fed. R. Civ. P. 56(e) (each party must properly support its own assertions of fact and properly address the opposing party's assertions of fact, as required by Rule 56(c)). Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Id. at 248. Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. (emphasis in original).

If a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party,

then summary judgment is not appropriate.  Id.  However, the moving party is entitled to judgment as a matter of law if the nonmoving party fails to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

In determining whether summary judgment should issue, the facts and inferences from those facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).  The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251-52.

With respect to each of Mr. Traversie's claims, the defendants have submitted materials that demonstrate the absence of a genuine issue of material fact.  Thus, Mr. Traversie must "go beyond the pleadings and by affidavits, depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue of material fact."  Davis v. City of Albia, 434 F. Supp. 2d 692, 697 (S.D. Iowa 2006) (citing Rouse v. Benson, 193 F.3d 936, 939 (8th Cir. 1999)); see Grabovac v. Allstate Ins. Co., 426 F.3d 951, 955 (8th Cir. 2005) (non-moving party cannot simply rest upon the pleadings); Baucom v. Holiday Companies, 428 F.3d 764, 766 (8th

Cir. 2005) (plaintiff may not rely on "mere allegations").  In assessing the motion for summary judgment, the court is to "consider only admissible evidence and disregard portions of various affidavits and depositions that were made without personal knowledge, consist of hearsay, or purport to state legal conclusions as fact."  Howard v. Columbia Pub. Schl. Dist., 363 F.3d 797, 801 (8th Cir. 2004); see Fed. R. Civ. P. 56(e) (a party may not rely on his own pleadings in resisting a motion for summary judgment; any disputed facts must be supported by affidavit, deposition, or other sworn or certified evidence).

**B.    Civil Rights Violation**

Mr. Traversie's first cause of action alleges a violation of Title VI's prohibition against discrimination by programs that receive federal assistance. (Docket 21 at pp. 6-9).  Specifically, 42 U.S.C. § 2000d provides: "No person in the United States shall, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.

It is well settled that Title VI "prohibits only intentional discrimination." Alexander v. Sandoval, 532 U.S. 275, 280 (2001); see also Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 178 (2005) (stating that "private parties may not invoke Title VI regulations to obtain redress for disparate-impact discrimination because Title VI itself prohibits only intentional discrimination").  Moreover, Title VI proscribes "only those racial classifications

9

that would violate the Equal Protection Clause or the Fifth Amendment." Regents v. Univ. of Cal. v. Bakke, 438 U.S. 265, 287 (1978).

Discrimination claims pursuant to Title VI and § 1981 are analyzed under the same standards as claims brought pursuant to Title VII of the Civil Rights Act.  See Fuller v. Rayburn, 161 F.3d 516, 518 (8th Cir. 1998); see also Richardson v. Loyola Coll. in Maryland, 167 Fed. Appx. 223, 224 (D.C. Cir. 2005).

Under this well-established framework, a plaintiff must demonstrate by a preponderance of the evidence that the actions taken by the defendant were "more likely than not based on the consideration of impermissible factors" such as race, ethnicity, or national origin.  Tex. Dep't of Cmty. Affiars v. Burdine, 450 U.S. 248, 254 (1981) (internal quotation marks and citations omitted).  In doing so, "the plaintiff may prove his claim with direct evidence, and absent direct evidence, he may indirectly prove discrimination" under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).  Brady v. Livingood, 456 F. Supp. 2d 1, 6 (D. D.C. 2006) (quotations omitted).  See also Fuller, 161 F.3d at 518.

Direct evidence is sufficient to defeat a defendant's motion for summary judgment.  See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) ("The McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination.") (quotations omitted).  "[D]irect evidence of discrimination is evidence that, if believed by the fact finder, proves the particular fact in question *without any need for inference*."  Lemmons v.

Georgetown Univ. Hosp., 431 F. Supp. 2d 76, 86 (D. D.C. 2006) (emphasis in original).

In this case, Mr. Traversie alleges a nurse named George became upset with him when he asked for additional medication, assaulted and battered him, and yelled at him, "You f***ing son of a bitch, he said, I'll teach you a "f***ing lesson you'll never forget you dumb f***ing Indian." (Docket 54 at ¶ 5). Mr. Traversie alleges after this incident took place, George began doing something to his stomach. Mr. Traversie alleges defendants "injured, carved, burned, and/or cared for [his] abdomen in such a manner that scars resembling three letters 'K' were permanently placed on [his] abdomen for no medically necessary purpose or reason." (Docket 21 at ¶ 29).

Defendants assert plaintiff "fails to provide any evidence that he was subjected to adverse treatment, or that he was treated differently than any other patient." (Docket 39 at p. 12). Defendants also contend "[t]here is no evidence that someone decided to scar Plaintiff" or that "someone decided to put 'KKK' on his abdomen because he belongs to a racial minority." Id. at p. 13.

Whether someone put "KKK" on Mr. Traversie's stomach is an issue of material fact to be resolved by a jury. While defendants contend the marks are not "KKK," the record is clear that various individuals believed the marks were "KKK," while others believed the marks said something else, and still others believed the marks were tape burns. If the marks are determined to be the letters "KKK," a discriminatory intent would be clear. See McMullen v. Carson, 754 F.2d 936, 938 (11th Cir. 1985) (recognizing the actual and perceived

11

nature of the KKK is a violent, criminal, and racist organization); Thompson v.
Dacco, Inc., No. 2-03-0079, 2006 WL 2038007, *11 (M.D. Tenn. 2006)
(recognizing "KKK" graffiti writings are racially offensive).

Whether the incident Mr. Traversie alleges between he and George
actually occurred is an issue of material fact.  For this court to make a decision
regarding the events alleged by Mr. Traversie would require the court to weigh
the evidence and make credibility determinations.  The court is not free to
make those findings when deciding a summary judgment motion.  See Kenney
v. Swift Transp., Inc., 347 F.3d 1041, 1044 (8th Cir. 2003) ("In ruling on a
motion for summary judgment a court must not weigh evidence or make
credibility determinations.") (citing Anderson, 477 U.S. at 255 ("Credibility
determinations, the weighing of the evidence, and the drawing of legitimate
inferences from the facts are jury functions, not those of a judge, [when she or]
he is ruling on a motion for summary judgment . . . .")).  Having reviewed the
record, the court finds there are issues of material fact related to Mr.
Traversie's civil rights claim.  Defendants' motion for summary judgment on
Mr. Traversie's civil rights claim is denied.[6]

---

[6]Defendants assert Mr. Traversie failed to exhaust his administrative
remedies.  (Docket 39 at p. 13) (citing 45 C.F.R. § 80.7).  Several courts have
held that "[a] plaintiff need not exhaust administrative remedies prior to
instituting a Section 2000d action."  Milsap v. U.S. Dept. of HUD, CIV. 4-89-
635, 1990 WL 157516, *10 (D. Minn. 1990) (citing Neighborhood Action
Coalition v. Canton Ohio, 882 F.3d 1012, 1015 (6th Cir. 1989); Chowdbury v.
Reading Hosp. & Med. Ctr., 677 F.2d 317, 321 (3d Cir. 1982)).

### C.   Medical Negligence

Mr. Traversie's second cause of action alleges that during his stay at Rapid City Regional Hospital, defendants cared for him "in such a manner that scars resembling three letters 'K' were positioned on [his] abdomen for no medically necessary purpose or reason, and in the process injured, carved, burned, and/or negligently cared for other portions of [his] body, specifically his abdomen and back."  (Docket 21 at ¶ 45).  Defendants contend "[t]here is no evidence that any defendant violated any medical standard of care resulting in the 'KKK.' "  (Docket 39 at p. 12).

A plaintiff in a medical malpractice case has the burden of showing the defendant acted without the care or skill ordinarily exercised under similar circumstances by physicians in good standing engaged in the same line of practice in the same or similar locality.  See Block v. McVay, 126 N.W.2d 808, 811-12 (S.D. 1964), overruled in part on other grounds by Shamburger v. Behrens, 418 N.W.2d 299 (S.D. 1988); SDPJI 20-70-30.  Under South Dakota law, "[t]he general rule in medical malpractice cases is that negligence must be established by the testimony of medical experts."  Magbuhat v. Kovarik, 382 N.W.2d 43, 46 (S.D. 1986).  This requirement applies to each element of a plaintiff's cause of action.  Koeniguer v. Eckrich, 422 N.W.2d 600, 601 (S.D. 1988).

South Dakota does permit plaintiffs to demonstrate negligence by applying the doctrine of res ipsa loquitur, although this doctrine should be invoked sparingly.  Wuest ex rel. Carver v. McKennan Hosp., 619 N.W.2d 682, 688 (S.D. 2000).  "The res ipsa loquitur doctrine is to be utilized only when the

13

facts and demands of justice make its application essential." Magbuhat v. Kovarik, 382 N.W.2d 43, 47 (S.D. 1986) (citations omitted). "It is a rule of law founded on the absence of specific facts which establish negligence." Id. (citations omitted). To warrant application of res ipsa loquitur, three elements must be present: (1) the instrumentality which caused the injury must have been under the control of the defendant or the defendant's servants; (2) the accident must be a type that does not happen absent negligence; and (3) the plaintiff's injury must result from the accident. Wuest ex rel. Carver, 619 N.W.2d at 688. In medical malpractice cases, negligence must be established by expert testimony unless it is the kind of negligence "within the realm of laymanistic comprehension." Id.

The type of negligence involved in this case is post-surgical care of open heart surgery patients. The defendants contend Mr. Traversie cannot introduce sufficient evidence to support a prima facie case of medical malpractice under South Dakota law because there is "no evidence that any defendant violated any medical standard of care resulting in the 'KKK.'" (Docket 39 at p. 12). Defendants point out Mr. Traversie's "experts have refused to so testify. Without those experts, [Mr. Traversie] cannot meet his burden" regarding his negligence claim. Id.

Mr. Traversie's response to defendants' motion for summary judgment relies on the doctrine of res ipsa loquitur to prove negligence, asserting expert testimony is not necessary to prove his negligence claim because "[t]he duty to keep a patient free from injuries that are not medically necessary or related to the procedure to which they have agreed to undergo is undoubtedly 'within the

14

general knowledge of laymen.' " (Docket 53 at pp. 6-7) (quoting <u>Nelson v.</u> <u>Murphy</u>, 258 P.2d 472, 474 (Wash. 1953).

Several state courts have held post-operative care is not within the common knowledge of laymen. <u>See</u> <u>Ball v. Mudge</u>, 391 P.2d 201, 204 (Wash. 1964) (finding a vasectomy and the necessity of post-operative tests did not lie within the common knowledge of laymen); <u>Paul v. Lee</u>, 568 N.W.2d 510, 514 (Mich. 1997) (post-operative follow-up care is not within the general knowledge of laymen) <u>overruled on other grounds in</u> <u>Smith v. Globe Life Ins. Co.</u>, 597 N.W.2d 28 (Mich. 1999); <u>Gray v. Sowell</u>, No. 54841, 1989 WL 1617, *2 (Ohio Ct. App. 1989) (finding "[m]atters of postoperative treatment and infections are beyond the kin of laymen.") (citations omitted); <u>Sanchez v. Rodriguez</u>, 226 Cal.App.2d 439, 445 (Cal.Ct.App. 1964) (finding post-operative condition or the result of treatment was not within the knowledge of laymen).

In this case, Mr. Traversie complains of the scarring on his stomach and contends defendants were negligent in providing his post-operative care. The court finds that post-operative care of open heart surgery patients, and specifically care for incision wounds, is not "within the realm of laymanistic comprehension." <u>Wuest ex rel. Carver</u>, 619 N.W.2d at 688. Laymen would not generally know what post-operative care a physician should provide, the manner in which it should be provided, or the manner in which the care should be explained to a patient.

Having identified the requirement for expert testimony to support Mr. Traversie's claim, the court must carefully review and consider the deposition testimony of Mr. Traversie's expert, Dr. James McGrann, to determine whether

that testimony is sufficient to allow the negligence claim to survive defendants'
motion for summary judgment.

Dr. McGrann testified at his deposition that he saw Mr. Traversie on
August 27, 2012.  At the time he examined Mr. Traversie, Dr. McGrann had
not seen any of Mr. Traversie's operative records or post-surgical records from
Rapid City Regional Hospital.  All Dr. McGrann reviewed was three
photographs of Mr. Traversie's stomach.  Mr. Traversie never provided Dr.
McGrann with any of his operative or post-surgical records despite Dr.
McGrann indicating reviewing these records would be beneficial.

Dr. McGrann testified he could not easily explain what produced the
marks on Mr. Traversie's stomach.  Regarding the marks, Dr. McGrann
testified he could not "explain either that [the marks were] inadvertent or that
[they were] purposely done."  (Docket 46-3 at p. 3; 6:12-14).  Dr. McGrann
went on to testify, "Because I couldn't, in all honesty say this was a
purposefully done thing or this was not.  And when you look at [the marks],
there was enough difference in the three different entities that were called KKK
that I couldn't say that this was purposely done."  Id., 7:22 - 8:3.  Regarding
his inability to make a determination about the cause of the marks, Dr.
McGrann states, "So the things that I would have liked to known is: Was there
anything unusual that occurred in the process of the final wound care in the
OR?  Was there anything unusual during his time in postop?  You know,
anything that would explain this.  Because something as simple as a scratch
could produce simple things like this.  And I didn't have that information, so I
couldn't make an assessment based on that."  Id., 8:17-24.

16

Dr. McGrann's report is consistent with the testimony provided at his deposition. Dr. McGrann concluded in his report that the marks on Mr. Traversie's stomach were not "easily explained by any type of a tape injury." (Docket 61-1 at p. 16). Dr. McGrann stated, "In this situation, I am left with being inconclusive" as to the cause of the marks and could not provide "a straightforward answer as to whether or not [the marks] were produced inadvertently by the surgical care." Id.

Mr. Traversie, in support of his memorandum in opposition to defendants' motion for summary judgment, included a declaration from Dr. McGrann.[7] Dr. McGrann's declaration is a series of if/then statements. Dr. McGrann states:

> In my opinion, and to a reasonable degree of medical certainty, the medical care that Vernon Traversie recieved while in the care and supervision of the Defendants fell below the acceptable standards in South Dakota *if* the injuries were caused by either (a) an inadvertent injury that Mr. Traversie was not made aware of, or (b) an intentional injury of a superficial pattern that was not medically necessary and/or not related to the procedure to which he agreed to undergo.
>
> In my opinion, and to a reasonable degree of medical certainty, the medical care that Vernon Traversie received while in the care and supervision of the Defendants fell below the acceptable standards in South Dakota *if* Mr. Traversie was neither (a) informed of the inadvertent injuries that occurred while under Defendants' care and supervision, or (b) made aware that those inadvertent injuries may result in long-term scarring.

---

[7]Defendants object to the use of Dr. McGrann's declaration on the basis the opinions are insufficient and most of the opinions were not disclosed as required under Fed. R. Civ. P. 26. (Docket 60 at pp. 4-8).

> In my opinion, to a reasonable degree of medical certainty, based upon my physical examination of Vernon Traversie, my review of the evidence in the record, including the deposition testimony of Mr. Traversie, and my education, knowledge, training, and experience as a medical doctor, *if* Defendants failed to inform Mr. Traversie of any inadvertent injuries, such a failure likely caused Mr. Traversie serious distress.

> In my opinion, to a reasonable degree of medical certainty, based upon my physical examination of Vernon Traversie, my review of the evidence in the record, including the deposition testimony of Mr. Traversie, and my education, knowledge, training, and experience as a medical doctor, *if* Defendants informed Mr. Traversie of any inadvertent injuries and recommended postoperative follow-up treatment, they could have prevented Mr. Traversie's distress and scarring.

(Docket 62 at ¶¶ 12-15) (emphasis added).

Dr. McGrann did not offer an opinion regarding the marks on Mr. Traversie's stomach or their cause. Dr. McGrann stated, "I do not know what caused Mr. Traversie's injuries." Id. at ¶ 16. Although Dr. McGrann indicated he knew the standard of care owed to patients, he did not declare defendants' care of Mr. Traversie breached that standard.

In a summary judgment context, once the movant meets its burden, the nonmoving party may not simply rest on the allegations in the pleadings but must set forth specific facts by affidavit or other evidence showing that a genuine issue of material fact exits. Anderson, 477 U.S. at 256; Fed. R. Civ. P. 56(e) (each party must properly support its own assertions of fact and properly address the opposing party's assertion of fact as required by Rule 56(c)). Mr. Traversie has not provided evidence to contradict defendants' experts' opinion that tape burns caused the scarring on Mr. Traversie's stomach. Rather, Mr.

18

Traversie's expert, Dr. McGrann, declared in his affidavit that he does not know what caused the scarring, only that it is not easily explained on the basis of tape.  Furthermore, Dr. McGrann did not provide any testimony that defendants' care of Mr. Traversie fell below the acceptable standard of care.  Dr. McGrann's opinions in his declaration are based on if/then statements.  Testimony that a physician failed to conform to a standard of care only *if* certain things occurred is insufficient to satisfy the burden.  This is particularly true when the plaintiff's expert is unwilling to testify definitively that defendants violated a standard of care.  See Wuest ex rel. Carver, 619 N.W.2d at 688 (in medical malpractice cases, the negligence must be established by expert testimony).

Even assuming Dr. McGrann's opinions are correct, they do not contradict defendants' experts' testimony that the scarring was caused by the repeated taping and retaping of Mr. Traversie's incision wounds, only that it is not easily explained on the basis of tape.[8]  The court finds Mr. Traversie has not set forth specific facts or medical opinions showing that a genuine issue of material fact exists.  The court grants defendants' motion for summary judgment on Mr. Traversie's medical negligence claim.

---

[8]The court finds it significant that plaintiff did not provide Dr. McGrann with his operative records or post-surgical records from Rapid City Regional Hospital even though Dr. McGrann felt it would be beneficial to have information coming from the operative room staff in determining the cause of Mr. Traversie's scarring.  (Docket 46-3 at pp. 2-3; 4:2-6:1)

**D.     Battery**

Mr. Traversie's third cause of action alleges defendants "injured, carved, burned, and/or cared for [his] abdomen in such a manner that scars resembling three letters 'K' were positioned on [his] abdomen for no medically necessary purpose or reason." (Docket 21 at ¶ 53).  Mr. Traversie contends the actions of defendants constitute a battery.  (Docket 21 at ¶¶ 50-55).

To establish a claim for battery, a plaintiff must show that "the defendant: (a) [intended] to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact; and, (b) an offensive contact with the person of the other directly or indirectly results." Stratmeyer v. Engberg, 649 N.W.2d 921, 925-26 (S.D. 2002) (citations and internal quotations marks omitted).  " '[T]he victim need not show a specific intent or design to cause the contact or to cause any singular and intended harm.  What is forbidden is the intent to bring about the result which invades another's interests in a manner that the law forbids.' " Id. at p. 926 (quoting Frey v. Kouf, 484 N.W.2d 864, 867 (S.D. 1992)).

Defendants contend there is no evidence of an intent to harm Mr. Traversie.  Defendants rely on Dr. Orecchia's explanation that the marks on Mr. Traversie's stomach were the result of tape burns.  (Docket 39 at p. 11). Dr. Orecchia stated while he was making rounds he noticed Mr. Traversie "had a lot of skin burns." Id.  Because of this, Dr. Orecchia says he spoke with staff and they used different types of "dressings in slightly different positions" in an attempt to "minimize the problem and not cause pain taking the dressings off."

Id.  Defendants argue Mr. Traversie has not provided evidence that his scars were the result of some intentional conduct intended to harm him.  Id. at p. 12.

In determining whether summary judgment should issue, the facts and inferences from those facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co., 475 U.S. at 587-88. Defendants concede the conduct alleged by Mr. Traversie, "if true . . . is horrendous." (Docket 39 at p. 16).  However, defendants contend Mr. Traversie's story is unbelievable because he never complained about the treatment he received while in the hospital.  Id.  Defendants argue Mr. Traversie's allegations about needing additional medication are far fetched because Mr. Traversie was on a "patient controlled analgesia pump" which allowed Mr. Traversie "to give himself additional doses of pain medication."  Id. at p. 19.  Defendants argue because Mr. Traversie could give himself additional medication through the pump, George Sazama, the nurse assigned to provide care, could not have denied him pain medication.  Id.

Mr. Traversie, in his sworn affidavit, asserts he did complain about the treatment he received in the hospital, particularly in regard to the incident he alleges occurred between himself and a nurse named George.  Additionally, it is possible Mr. Traversie requested additional medication.  Although Mr. Traversie's medication was controlled by a pump that allowed him to give himself additional doses to control the pain, there were several times when hospital staff had to increase the dosage to control Mr. Traversie's pain.  As a result, the court cannot say whether Mr. Traversie was denied pain medication.

21

Whether a battery occurred is a material issue of fact that must be resolved by a jury.  The court cannot weigh the evidence and make a credibility determination regarding the battery allegations.  See Kenney, 347 F.3d at 1044 ("In ruling on a motion for summary judgment a court must not weigh evidence or make credibility determinations.") (citing Anderson, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when she or] he is ruling on a motion for summary judgment . . . .")).  Defendants' motion for summary judgment on Mr. Traversie's battery claim is denied.

**E.    Intentional Infliction of Emotional Distress**

Mr. Traversie's final claim alleges defendants "injured, carved, burned, and/or cared for [his] abdomen in such a manner that scars resembling three letters 'K' were positioned on [his] abdomen for no medically necessary purpose or reason."  (Docket 21 at ¶ 57).  Mr. Traversie contends permitting "a blind man, to go home without making him aware that any abrasions were present on his abdomen at all – let alone that those abrasions would result in scars resembling three letters 'K' – constituted further despicable conduct on the part of Defendants, and each of them, with a willful and conscious disregard for Plaintiff's safety and wellbeing."  Id.  Mr. Traversie alleges this conduct was extreme and outrageous and done in a manner "intend[ing] to inflict emotional distress on Plaintiff."  Id.

In order to establish a claim of intentional infliction of emotional distress, a plaintiff must show: " '(1) extreme and outrageous conduct by the defendant;

(2) that the defendant intended to cause severe emotional distress; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress must result.' " Stratmeyer, 649 N.W.2d at 926 (quoting Christians v. Christians, 637 N.W.2d 377, 382 (S.D. 2001)).

For the same reasons the court denied defendants' motion for summary judgment regarding Mr. Traversie's civil rights and battery claims, the court also denies defendants' motion for summary judgment on Mr. Traversie's claim of intentional infliction of emotional distress.  The court finds issues of material fact exist regarding the treatment defendants provided to Mr. Traversie and specifically whether the alleged events occurred between Mr. Traversie and George Sazama.  These are factual issues to be determined by a jury.

Defendants made a request for oral argument on their motion for summary judgment pursuant to D.S.D. Civ. LR 7.1C.  (Docket 39 at p. 25). Local Civ. Rule 7.1C states that "oral argument will be had only upon order of the court."  The court finds the written record in this case is sufficient and that oral argument on the motion for summary judgment is not necessary to resolve the motion.

**F.    TRS Surg Assist, Inc.**

TRS Surg Assist, Inc. ("TRS") is a corporation managing the service of Tina Salley, a Certified Surgical Assistant.  (Docket 52 at ¶ 2).  Ms. Salley was a surgical assistant at Mr. Traversie's heart surgery.  Id. at ¶ 5.  Ms. Salley was involved in preparing Mr. Traversie for surgery, positioning, preparing the room for surgery, and harvesting the vein used in the bypass operation.  Id. at ¶ 6.

Ms. Salley testified during her deposition she also sutured the skin closed at the end of surgery. (Docket 52-1 at p. 6; 11:9-13).

TRS joined in the other defendants' motion for summary judgment. (Docket 51). TRS also filed a reply in support of its motion for summary judgment. (Docket 59). TRS asserts no evidence exists which implicates wrongdoing on the part of TRS or Ms. Salley. Id. at p. 1. Other than the paragraph in the complaint identifying TRS as a defendant, there are no allegations specifically alleging TRS or Ms. Salley injured Mr. Traversie. Ms. Salley did not perform the surgery nor did she provide care to Mr. Traversie after the procedure. Mr. Traversie has not asserted any claims related to Ms. Salley's role in harvesting of the vein or the suturing procedure used to close his skin. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing there is a genuine issue for trial.'" Anderson, 477 U.S. at 249 (quoting Fed. R. Civ. P. 56(e)).

Mr. Traversie has not presented any facts showing a genuine issue for trial related to the services performed by TRS. Mr. Traversie does not dispute the limited involvement of TRS or its claim Ms. Salley was not involved in any wrongdoing. The court finds no genuine issue of material fact exists regarding the liability of TRS. TRS is entitled to summary judgment.

Accordingly, it is hereby

ORDERED that the motion for summary judgment (Docket 38) brought by defendants Rapid City Regional Hospital Inc., Regional Health Inc. and

Regional Health Physicians, Inc. is granted in part and denied in part as set forth above.

IT IS FURTHER ORDERED that defendant TRS Surg Assist, Inc.'s motion for summary judgment is granted.

IT IS FURTHER ORDERED that defendants' request for oral argument is denied.

Dated September 20, 2014.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE

25